Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 01 C 50388 | **DATE** | 10/25/2002 |
| **CASE TITLE** | Gray vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons stated on the attached memorandum opinion and order, the ALJ's decision to deny benefits is sustained. The ALJ is affirmed at all steps of the disability determination process as outlined in the attached memorandum opinion and order. Plaintiff's Motion for Summary Judgment is denied. Defendant's Motion for Summary Judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | OCT 25 2002 | |
| | Docketing to mail notices. | | 19 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 10/25/2002 | |
| sp | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | sp mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| DONNA GRAY, ) | |
| ) | |
| Plaintiff, ) | Case No. 01 C 50388 |
| ) | |
| v. ) | Magistrate Judge |
| ) | P. Michael Mahoney |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Donna Gray, ("Plaintiff"), seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). See 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's final decision denied Plaintiff's application for Disability Insurance Benefits (DIB) pursuant to Title XVI of the Social Security Act (the "Act"). 42 U.S.C. §1381(a). This matter is before the Magistrate Judge pursuant to consents filed by both parties on January 22, 2002. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

## I. BACKGROUND

Plaintiff filed for DIB on June 15, 2000, alleging disability beginning on February 4, 2000. (Tr. 99-102). Plaintiff's application for benefits was denied on August 4, 2000. (Tr. 69-72). On August 23, 2000, Plaintiff filed a request for reconsideration. (Tr. 73). Plaintiff's request for reconsideration was denied on October 19, 2000. (Tr. 74-76). Plaintiff then filed a request for a hearing before an Administrative Law Judge (ALJ) on November 2, 2000. (Tr. 77). Plaintiff appeared, with counsel, before an ALJ on April 4, 2001. (Tr. 20-66). In a decision dated June 27, 2001, the ALJ found that Plaintiff was not entitled to DIB. (Tr. 10-19). On June 28, 2001, Plaintiff

requested a review of the ALJ's decision by the Appeals Council. (Tr. 8-9). On September 28, 2001, the Appeals Council denied Plaintiff's request for review. (Tr. 5-6).

## II. FACTS

Plaintiff was born on May 17, 1968, and was thirty-three years old at the time of her April 4, 2001, hearing before the ALJ. (Tr. 22). Plaintiff had completed her education through the twelfth grade. (Tr. 26-28). At the time of the hearing, Plaintiff, single, was living with her parents and her four year old son. (Tr. 26). Plaintiff had been employed by the Work Place on a temporary basis for approximately one month performing data entry in January 2000. (Tr. 29-30).

At the April 2001 hearing, Plaintiff testified that she stopped working due to her inability to sit for long periods of time because of her back. (Tr. 31). Additionally, Plaintiff testified that her hands would go numb throughout the day and she would have to stop any activity until feeling resumed back in her hands. (Tr. 32).

Before her temporary employment service through the Work Place, Plaintiff testified that she worked for three months at Landstar from November 1999 through January 2000. (Tr. 33). At Landstar, Plaintiff was a permit clerk. (*Id.*). Her daily activity included retrieving boxes and carrying them back and forth, making copies of permit books, and putting binders together. (Tr. 34). Before Landstar, Plaintiff testified that she worked for Conseco Services, in 1999, doing data entry. (Tr. 35). Plaintiff's job entailed separating insurance claims and putting the claims in order for other departments or entering the claims herself into a computer. (Tr. 35). When asked by the ALJ, Plaintiff stated that since 1986, all her jobs have entailed data entry. (Tr. 37).

Plaintiff further testified that on a normal day, Plaintiff would get up, cook breakfast or do the dishes and get her son ready for school. (Tr. 38). Additionally, Plaintiff stated she would go to

2

the grocery store on a normal day. (*Id.*). Most of the time, Plaintiff would drive her car but have some pain in her back from trying to reach the pedals. (Tr. 50). In terms of house cleaning, Plaintiff stated that she, her mom, and her brother divide up most of the house cleaning, each doing a little bit. (Tr. 39). However, Plaintiff testified that she is unable to push and pull on the vacuum cleaner or bend over to pick up items on the floor because of her back. (Tr. 39).

Lastly, Plaintiff testified that she is able to sit approximately twenty-five to thirty minutes before her back begins to bother her. (Tr. 40). After sitting for that length of time, Plaintiff must stand and walk around for a while, generally about ten to fifteen minutes, until her back feels better. (*Id.*). However, Plaintiff testified that if she stands too long, generally thirty to forty-five minutes, her back begins to bother her and she must sit down. (*Id.*).

Vocational expert, Susan Entenberg, appeared before the ALJ at Plaintiff's April 2001 hearing. (Tr. 55). Ms. Entenberg testified that Plaintiff's past work was categorized as sedentary, semi-skilled. (Tr. 56). The ALJ directed Ms. Entenberg to assume an individual with Plaintiff's vocational characteristics and the following limitations: the "[individual may lift and carry up to a maximum of 10 pounds on an occasional basis, and light items such as small hand tools, individual case files, no more than frequently. May stand and walk for no more than a combined total of 2 hours in an 8 hour day, and for no longer than 10 to 15 minutes continuously at one time. [T]he individual may sit with normal breaks for at least 6 hours in an 8 hour day. [C]annot climb ladders, ropes, or scaffolds, but my [sic] other wise climb ramps or stairs, balance, stoop, kneel, crouch, or crawl no more than an occasional basis." (Tr. 58).

Ms. Entenberg testified that, based on the ALJ's hypothetical, a person with such limitations would be able to work as a receptionist, a telemarketer, or as a security monitor. (Tr. 39-40). Ms.

3

Entenberg further testified that even if the individual could not perform fine manipulative tasks like fingering and pinching on a frequent basis, such limitations would not impact available jobs. (Tr. 40).

## III.  MEDICAL HISTORY

Plaintiff, a data entry worker since 1986, began to experience numbness in her wrists and fingers sometime in April 1999. (Tr. 132). According to Plaintiff, Dr. Forrest Riordan prescribed Celebrex and gave hand and wrist splints to Plaintiff to wear at work. (*Id.*). On December 19, 2000, Dr. Regina Bielkus reported that Plaintiff's EMG report indicated symptoms consistent with bilateral carpal tunnel syndrome. (Tr. 233).

On February 17, 1999, Plaintiff went to the Rockford Gastroenterology Associates after experiencing chronic mild intermittent reflux symptoms. (Tr. 162). Dr. S. Christopher Moore, of the Rockford Gastroenterolgy Associates, recommended, (Tr 163), and performed, on March 4, 1999, an upper endoscopy. (Tr. 165). On May 18, 2000, Plaintiff went to the Crusader Clinic complaining of nausea, vomiting, and epiastric pain. (Tr 175). Dr. Adakola Ashaye, of the Crusader Clinic, doubled Plaintiff's amount of Prilosec. (*Id.*). On August 2, 2000, Dr. Moore performed a second upper endoscopy on Plaintiff. (Tr. 164). The upper endoscopy showed Plaintiff to have functional dyspepsia which Dr. Moore opined would improve if she would loose weight and give up smoking. (*Id.*).

Sometime in 1998 Plaintiff slipped and fell on an ice patch on a friend's porch. (Tr. 166). Since that fall, Plaintiff has complained of reoccurring back pain. (Tr. 186). On April 5, 1998, Dr. Martin Butler performed a radiographic examination on Plaintiff and reported Plaintiff's lateral and oblique projections show a normal lumbar spine with no evidence of significant congenital or

acquired abnormalities. (Tr. 204). On February 4, 2000, Plaintiff bent over to do some dusting around her house when she experienced pain traveling down her right leg. (Tr. 169). On February 6, 2000, Plaintiff saw Dr. John Stranig regarding the reoccurring pain in her back and the recent pain in her right leg. (*Id.*). During the examination, Dr. Stranig gave the Plaintiff a Toradol injection. (*Id.*). Additionally, Dr. Stranig prescribed Tylenol No. 3, Flexeril and referred Plaintiff to Dr. Ashaye. (*Id.*).

On February 24, 2000, Plaintiff saw Dr. Edward Steffen who ordered an MRI-Lumbar Spine be done on Plaintiff. (Tr. 202). Dr. Steffen reported, after the MRI, that Plaintiff had a small to moderate slightly right paracentral broad-based protrusion at L4-5 which effaces epidural fat, but only minimally indents right paracentral ventral sac. (*Id.*). Additionally, Dr. Steffen reported tiny insignificant central protrusions and insignificantly slight bulge at 11-12 with ventral endplate spurring minimal and moderate T11-12 and mild T10-11. (Tr. 202-203).

On March 6, 2000, Dr. John Jaworowicz reported a MRI of Plaintiff showed the presence of a L3-4 herniated disc. (Tr. 186). Dr. Jaworowicz recommended Plaintiff get an epidural steroid injection. (*Id.*). On April 17, 2000, Dr. Jaworowicz again met with the Plaintiff. (Tr. 189). On this occasion, Dr. Jaworowicz reported that the Plaintiff stated fairly minimal improvement in her pain since her prior epidural shot. (*Id.*). On April 17, 2000, Plaintiff received her second epidural steroid injection. (*Id.*). On July 18, 2000, Plaintiff again saw Dr. Jaworowicz. (Tr. 195). Dr. Jaworowicz reported, with the two prior epidural steroid injections, Plaintiff noted a forty to fifty percent improvement in her pain. (*Id.*). Plaintiff received her third epidural steroid injection on July 18, 2000. (*Id.*). Additionally, Plaintiff requested a referral to a neurosurgeon. Dr. Jaworowicz recommended Dr. Todd Alexander for possible surgical intervention. (*Id.*).

5

Before seeing Dr. Alexander, Plaintiff was admitted to the emergency room and saw Dr. Stranig on August 26, 2000. (Tr. 181). Plaintiff complained of upper back pain in between her shoulder blades. (*Id.*). Additionally, Plaintiff complained that it hurt anytime she moved. Dr. Stranig had a T-spine X-ray done, which came up negative. Dr. Stranig ordered a radiology test be done on Plaintiff's back and gave the Plaintiff sixty milligrams of Toradol, which Dr. Stranig reported markedly improved her pain. (*Id.*). The radiology report, done by Dr. Stephen Bernsten, indicated Plaintiff's vertebral bodies are of normal height and the disk spaces are fairly well maintained. (Tr. 180). The report did indicate some minimal anterior osteoarthritic changes involving the lower thoracic vertebral bodies. (*Id.*). In all, Dr. Bernsten reported no evidence for compression fracture but Plaintiff is suffering from minimal degenerative changes in her lower thoracic spine. (*Id.*).

On August 31, 2000, the Plaintiff saw Dr. Alexander. (Tr. 222). Dr. Alexander reported the Plaintiff has an L4-5 disk protrusion which is central with a mild right-sided paracentral component. (*Id.*). Dr. Alexander also reported some improvements in Plaintiff's pain with non-operative therapy. Dr. Alexander did not think that Plaintiff was a good candidate for surgical treatment because of the small size of the protrusion, the central location, the predominance of back pain versus leg pain, the bilateral symptoms and Plaintiff's obesity. (*Id.*). Dr. Alexander noted that Plaintiff will have to tolerate a certain degree of discomfort with possible improvements over the long term. (*Id.*).

## IV. STANDARD OF REVIEW

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the court, however is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or

substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citation omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987), *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of the witness, the determination may only be disturbed if it is "patently wrong" or if it finds no support in the record. *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989), *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However, when such determinations rest on objective factors of fundamental implausibilities rather than subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision."

7

*Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), *Yousif v. Chater*, 901 F. Supp. 1377, 1384 (N.D. Ill. 1995).

## V. <u>FRAMEWORK FOR DECISION</u>

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied her application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1998).[1] The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past; and (5) whether the claimant is capable of performing any other work in the national economy.

At Step One, the Commissioner determines whether the claimant is currently engaged in

---

[1] The Commissioner has promulgated parallel regulations governing disability determinations under Title II and Title XVI. See 20 C.F.R. Ch. III, Parts 404, 416. For syntactic simplicity, future references to Part 416 of the regulations will be omitted where they are identical to Part 404.

8

substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[2] A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers from severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to Step Four.

---

[2]The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

9

At Step Four, the Commissioner determines whether the claimant's residual functional capacity allows the claimant to return to past relevant work. Residual functional capacity is a measure of the abilities which the claimant retains despite his impairment. 20 C.F.R. § 404.1545(a). Although medical opinions bear strongly upon the determination of residual functional capacity, they are not conclusive; the determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1565; Social Security Ruling 82-62. If the claimant's residual functional capacity allows him to return to past relevant work, then he is found not disabled; if he is not so able, the inquiry proceeds to Step Five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987); Social Security Law and Practice, Volume 3, § 43:1. If the ALJ correctly relies on the grids, vocational expert evidence is unnecessary. *Luna v. Shalala*, 22 F.3d 687, 691-92 (7th Cir. 1994). If the Commissioner establishes that sufficient work exists in the national economy that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

## VI. ANALYSIS

The court will proceed through the five step analysis in order.

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision. (Tr.14 ).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and eighty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis the ALJ found Plaintiff suffered from severe impairments. Specifically, the ALJ found the Plaintiff to have the following medically determinable impairments: bilateral carpel tunnel syndrome, degenerative disease of the lumbar spine, gastroespohageal reflux disease, and obesity. (Tr. 18).

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from severe impairments. This finding is not challenged by either party and the court finds no reason to disturb it. The ALJ's finding as to Step Two of the Analysis is affirmed.

C. Step Three: Does claimant's impairment meet or medically equal an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three the ALJ determined that Plaintiff's impairments do not meet or equal any impairment in Appendix 1 to Subpart P of Regulations number 4. (Tr. 14). The ALJ found Plaintiff's complaints of disabling symptoms and limitations not entirely credible. (Tr. 18). Specifically, the ALJ found that Plaintiff's medically determinable impairments preclude the following work-related activities: lifting/carrying up to 10 pounds more than occasionally; lifting/carrying items such as small hand tools or individual case files more than frequently; standing and/or walking for more than a combined total of two hours in an eight hour workday or for longer than ten/ fifteen minutes continuously; sitting with normal breaks for more than at least six hours in an eight hour day, but must be allowed to alternate between sitting and standing positions at intervals of forty-five minutes for a period of two/three minutes on each such occasion, balancing, stooping, crouching, kneeling or crawling more than occasionally; climbing ropes, ladders or scaffolds; climbing (ascending) ramps or stairs more than occasionally; and performing fine manipulative tasks, such as fingering, pinching with either hand more than frequently. (Tr. 14). The ALJ noted the RFC is supported by the longitudinal record. (Tr. 14).

The ALJ also noted the Plaintiff can do the dishes, cook, walk around the house and go to the grocery store (usually driving herself). At the hearing, the Plaintiff noted she occasionally mops and vacuums, with some pain. (Tr. 17). The Plaintiff has received some treatment for her pain, but the various forms of treatment have been routine and conservative in nature. (*Id.*). The ALJ also noted that the treatments have to some extent been successful in that Plaintiff has felt better. (*Id.*).

The Plaintiff argues the ALJ failed to properly consider the medically determinable impairment of obesity as mandated by Social Security Rule 00-3p. ("SSR 00-3p")(Mem. of Law in Support of Pl.'s Mot. for Judgment on the Admin. Record and Pleadings at 6). This court disagrees.

12

The SSR 00-3p, No. 7 (C.E. 2000), provides that "because there is no listing for obesity, ... an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing," or it shall be determined that "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." The Plaintiff argues that SSR- 003-p mandates a full analysis by the ALJ that takes into consideration both Plaintiff's obesity and her degenerative disc disease of the lumbar spine. (Mem. of Law in Support of Pl.'s Mot. for Judgment on the Admin. Record and Pleadings at 7). The medical records do contain references to Plaintiff's weight as being obese. (Tr. 175, 181, 222). Also, Plaintiff is correct that this court should consider at step three whether Plaintiff's weight problem had a disabling effect on her overall condition. *See Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000)(stating "it appears the ALJ failed to consider at step three the disabling effect of [claimant's] weight problem on her overall condition. The regulations require the agency to consider the combined effect of all the claimant's ailments, regardless of whether 'any such impairment, if considered separately, would be of sufficient severity.'")(citing 20 C.F.R. §404.1523).

However, the Plaintiff has failed to disclose which listing the Plaintiff's impairment fits under. Assumably, the Plaintiff is attempting to fit under 1.00(B)(*Disorders of the Spine*). The problem, of course, is that if this is true, the medical evidence does not support a finding that Plaintiff's impairment fits under the listing. Dr. Ashaye opined that Plaintiff is suffering from acute lumbar spine joint pain and prescribed medication. (Tr. 169). Dr. Steffen opined that Plaintiff had a small to moderate broad-based protrusion at L4-5 and a tiny insignificant central protrusion at L5. (Tr. 184). Finally, Dr. Alexander noted Plaintiff is "able to toe walk, but has trouble heel walking." (Tr. 222). Additionally, Dr. Alexander reported that although Plaintiff's MRI scan shows an L4-5

13

disk protrusion, it does not appear to result in any significant nerve root impingement. (*Id.*). None of these reports support the finding of an impairment, individually, or even in combination with Plaintiff's obesity.

Even though the ALJ did not fully analyze Plaintiff's weight problem (although it was mentioned), the medical records do not support a finding that Plaintiff's weight problem, when considered with her other conditions, mandates a finding of disability at Step 3. Plaintiff did not provide any testimony at her hearing before the ALJ detailing how her weight impaired her ability to work. Taken either individually, or in total, Plaintiff's back problems and her obesity do not meet a listing.

Substantial evidence exists to support the ALJ's finding and the court finds no reason to disturb it. Therefore, the ALJ's determination as to Step Three of the Analysis is affirmed.

D. Step Four: Is the claimant capable of performing work which the claimant performed in the past?

In performing the analysis for Step Four, the ALJ determined that Plaintiff is unable to perform any of her past relevant work. (Tr. 19). The finding of the ALJ as to Step Four of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step Four of the Analysis is affirmed.

E. Step Five: Is the claimant capable of performing any work existing in substantial numbers in the national economy?

At Step Five the ALJ determined that Plaintiff's Residual Functional Capacity allowed her to perform a limited range of sedentary work. (Tr. 16) The ALJ also determined that even though Plaintiff's limitations prevent the performance of the full range of sedentary work, there still exists

14

a significant number of jobs in the national economy that Plaintiff can perform. (*Id.*).

The ALJ began by determining Plaintiff's RFC. The ALJ's specific findings are detailed above in Step Three. The ALJ's support for Plaintiff's RFC is found mainly in Plaintiff's own testimony. For example, Plaintiff testified that she could lift fifteen pounds with both hands occasionally and the ALJ limited her RFC to lifting ten pounds occasionally. (Tr. 18, 50). Also, Plaintiff testified that she could not sit or stand for periods longer than forty-five minutes and the ALJ included in Plaintiff's RFC the Plaintiff's need to alternate positions between sitting and standing every forty-five minutes. (Tr. 18, 40).

Regarding Plaintiff's right hand difficulties, Plaintiff testified it takes here approximately five minutes to write one page, (Tr. 42), and that she has had previous jobs that "really bothered" her hand. (Tr. 37). However, Plaintiff testified that she can make a fist with both hands, button and zip clothing, pick up and manipulate objects the size of a dime, pick up and hold a coffee pot, manipulate silverware and grasp and turn a door knob with either hand. (Tr. 52-53). The ALJ took this testimony into consideration and as part of Plaintiff's RFC the ALJ precluded Plaintiff from jobs requiring fine manipulative tasks, such as fingering or pinching, with either hand more than frequently. (Tr. 18-19).

With regard to Plaintiff's back problems, Plaintiff testified that she has chronic back pain which travels down her right leg and sometimes her left leg. (Tr. 14). On April 5, 1998, only a couple of months after Plaintiff fell and hurt her back, a radiology report indicated a normal lumbar spine with no evidence of significant congenital or acquired abnormalities. (Tr. 204). On February 24, 2000, an MRI revealed that Plaintiff had some bulging/spurring at various levels without evidence of nerve root impingement. (Tr. 184). A small to moderate protrusion was reported at L4-

15

5, with a tiny protrusion at L5. (*Id.*). Plaintiff received three epidural shots from March 2000 thru June 2000, which helped Plaintiff with her back pain. (Tr. 151-16 ). In August 2000, a radiology report indicated no evidence for compression fractures and Plaintiff suffered only from minimal degenerative changes to her lower thoracic spine. (Tr. 180). Based on the above mentioned symptoms and impairments and Plaintiff's entire medical record, the ALJ determined Plaintiff can perform a limited range of sedentary work. (Tr. 18).

The Plaintiff, age 33 years old at the time of the hearing, fell within the "younger (less than 45)" category. (Tr. 17). The ALJ found that Plaintiff's past relevant work provided some skills, but those skills do not transfer to other occupations within the Plaintiff's RFC. (Tr. 17-18). Thus, the ALJ called upon a vocational expert to determine if Plaintiff is capable of performing any work existing in substantial numbers in the national economy.

The vocational expert, Susan Entenberg, testified that Plaintiff's prior work was semi-skilled sedentary. (Tr. 16). However, because of the need for continuous fingering activity and extended sitting requirements, Plaintiff could not perform her previous work. (*Id.*). Under the RFC, the vocational expert determined that a significant number of jobs did exist in the Chicago Metropolitan Region (Cook County and surrounding six counties) that Plaintiff could perform. (*Id.*). These included: reception (low semi-skilled to unskilled--2,000 jobs); telemarketing (unskilled--10,000 jobs; Security Monitor (unskilled--2,000 jobs). (*Id.*).

Plaintiff argues that her degenerative disc disease by itself limits her to sedentary work but, when combined with her carpal tunnel, Plaintiff's capacity is less than sedentary and, thus, Plaintiff is unable to perform fine manipulations bilaterally on a frequent basis. (Mem. of Law in Support of Pl.'s Mot. for Judgment on the Admin. Record and Pleadings at 8). The Magistrate Judge

disagrees. The only medical record available to the Magistrate Judge that details Plaintiff's carpal tunnel is Dr. Bielkus's. (Tr. 233). Dr. Bielkus's medical report indicates "findings [that] are consistent with a bilateral carpal tunnel syndrome, worse on the right side." (*Id.*). However, the report fails to describe what Plaintiff can or cannot do as a result of her carpal tunnel. In fact, no report presented to the Magistrate Judge does. The ALJ looked instead to Plaintiff's credibility and determined that the Plaintiff's daily activities are "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 17). The Plaintiff testified that she can do the dishes, cook, grocery shop, mop, vacuum, and drive her car. These activities require the use of Plaintiff's hands and the Magistrate Judge will not disturb the deference given to the ALJ. *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)(stating "[w]e have repeatedly stated that an ALJ's credibility determination will not be disturbed unless it is patently wrong.")

Substantial evidence exists to support the ALJ's finding and this court finds no reasons to disturb it. Therefore, the ALJ's determination as to Step Five of the Analysis is affirmed.

## VII. CONCLUSION

For the reasons stated above, the ALJ's decision to deny benefits to Plaintiff is sustained. The ALJ is affirmed at all steps of the disability determination process as outlined above. Plaintiff's motion for summary judgment to the administrative record and pleadings is denied and summary judgment is granted to Defendant.

**ENTER:**

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 10/25/02

17

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

DONNA GRAY

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 01 C 50388

JO ANNE B. BARNHART

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Judgment is entered in favor of the defendant and against the plaintiff.

Michael W. Dobbins, Clerk of Court

Date: 10/25/2002

Gale L. Graeff, Deputy Clerk